1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHANE KISMAN, an individual,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

Case No. 2:21-CV-03164-AB (Ex)

**ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE, AND (2) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**

Before the Court is Defendant United Parcel Service, Inc.'s ("Defendant" or "UPS") Motion to Dismiss the Complaint ("Compl.," Dkt. No. 1) of Plaintiff Shane Kisman ("Plaintiff" or "Kisman") for improper venue, as well as Defendant's Alternative Motion to Transfer Venue to the District of Nevada. ("Mot.," Dkt. No. 10.) Plaintiff filed his Opposition to the Motion to Dismiss and Motion to Transfer Venue. (collectively, "Motions"; "Opp'n," Dkt. No. 16.) Defendant then filed a Reply. ("Reply," Dkt. No. 23.) The Court deemed the matter appropriate for decision without oral argument and vacated the hearing set for Friday, July 23, 2021. L.R. 7–8. For the following reasons, the Court (1) **DENIES** Defendant's Motion to Dismiss, and (2) **DENIES** Defendant's Motion to Transfer Venue.

1.

# I. BACKGROUND

In the operative complaint, Kisman alleges twelve causes of action against UPS including:

(1) Age discrimination under Cal. Gov't Code §§ 12940(a), (c) and 28 USC §§ 1346, et. seq. (Compl. ¶¶ 153–158);

(2) Disability discrimination under Cal. Gov't Code §§ 12940(a), (c) and 29 C.F.R § 1630.4 (Compl. ¶¶ 159–164);

(3) Failure to accommodate disability under Cal. Gov't Code §§ 12940(m)(1) and 29 C.F.R §§ 1630.4, 1630.2(o) (Compl. ¶¶ 165–171);

(4) Failure to engage in the interactive process under Cal. Gov't Code §§ 12940(n) and 29 C.F.R § 1630.2(o) (Compl. ¶¶ 172–180);

(5) Family and Medical Leave Act (FMLA) discrimination and retaliation under Cal. Gov't Code § 12940(h) and 28 USC § 633(a), et seq. (Compl. ¶¶ 181–190);

(6) Retaliation for complaints of discrimination and harassment under Cal. Gov't Code § 12940(h) and 28 USC § 633(a), et seq. (Compl. ¶¶ 191–194);

(7) Whistleblower retaliation, in violation of Labor Code § 1102.5 (Compl. ¶¶ 195–199);

(8) Wrongful termination, in violation of public policy (Compl. ¶¶ 200–204);

(9) Intentional infliction of emotional distress (Compl. ¶¶ 205–210);

(10) Negligence (Compl. ¶¶ 211–213);

(11) Fair Labor Standards Act (FLSA) retaliation under 29 U.S.C. § 215(a)(3) (Compl. ¶¶ 214–218); and

(12) Whistleblower retaliation, in violation of Labor Code § 6310 and 49 U.S.C § 31105, for Plaintiff's filing of both Occupational Safety and Health Administration (OSHA) and Surface Transportation Assistance Act (STAA) complaints (Compl. ¶¶ 219–225).

## A. Kisman's Driving Route and Operations Structure of Defendant

Plaintiff Kisman is a resident of Washoe County, Nevada. (Mot. at 3; *see* Compl. ¶ 1 ("Plaintiff . . . at all times relevant to this action, resided in the . . . State of Nevada.").) Defendant UPS is incorporated in Ohio and has its principal place of business in Atlanta, Georgia. (Compl. ¶ 2; Mot. at 3 ¶ 2.) As it is a unionized

company, UPS has a collective bargaining agreement with the International

Brotherhood of Teamsters ("Teamsters").  (Mot. at 4–5.)  Kisman is a member of

Teamsters Local 533, which represents UPS employees in "Northern Nevada."  (*See*

*id.* at 12 n.4.)

    In total, Kisman worked for UPS as a "feeder driver" delivering packages from

one facility to another for 28 years.  (Declaration of Philip Cote ("Cote Decl.") ¶ 4;

Compl. ¶ 7–8.)  UPS asserts and Kisman does not dispute that he was based out of the

Reno/Sparks facility, and has been throughout his tenure with UPS.  (Kisman Decl. ¶

8; *see also* Cote Decl. ¶ 4 ("Kisman was based in the Reno facility throughout his

employment with UPS.").)  Kisman's managers and supervisors at UPS were also

based out of the Reno facility.  (Cote Decl. at ¶¶ 4–6.)

    Kisman worked for UPS fulltime as a package driver during peak seasons in

1993 and 1994 while simultaneously running his own business; he was hired as a

fulltime package driver on or about April 7, 1995.  (Compl. ¶ 7–8.)  Kisman was

terminated on January 12, 2021 (with official notice on January 15, 2021), just 50

days before he became eligible for Peer 80 retirement benefits.  (*Id.*)

    From approximately 2016 to 2021, Kisman's driving route typically started in

Reno/Sparks, Nevada,[1] and ended in Ontario, California.[2]  The proximity of Reno to

the California border means that the majority of Kisman's time spent driving took

---

[1] Sparks is a suburb of Reno, also located in Washoe County, NV.  For the purposes of
this case, they represent roughly the same geographical location.

[2] Ontario, California is geographically located in the Central District of California.
Reno/Sparks, Nevada is located in the District of Nevada.  While it is clear that the
majority of Plaintiff's time spent driving was in the State of California, which *judicial
district* he was in at any given time, or where he spent most of his time is somewhat
unclear.  Plaintiff provided no information regarding which freeways or routes he took
while driving throughout California.  He did, however, note that he made stops in
Mammoth, CA, and Bishop, CA along this route; both are located in the Eastern
District of California.  (Opp'n at 4.)

3.

place in California.  (Declaration of Shane Kisman ("Kisman Decl.") ¶ 9.)  Below is an *estimated* chart of Kisman's time spent (in hours) in each geographical location on a typical trip:

| | |
|---|---|
| 0 hr. 0 min. | Arrive at UPS facility in Sparks, NV |
| 1 hr. 10 min. | Depart Sparks, NV |
| 2 hr. 10 min. | Pass Minden, NV (located on U.S. Route 395) |
| 2 hr. 20 min. | Leave NV and enter CA |
| 4 hr. 15 min. | Stop in Mammoth, CA (on U.S. Route 395) |
| 4 hr. 55 min. | Stop in Bishop, CA (on U.S. Route 395) |
| 9 hr. 35 min. | Arrive at airport in Ontario, CA |
| 9 hr. 55 min. | Arrive at UPS center in Ontario, CA |
| 10 hr. 30 min. | Arrive at hotel and punch out in Ontario, CA |
| 20 hr. 35 min. | Punch in at hotel, end off-duty time in Ontario, CA |
| 20 hr. 50 min. | Arrive at UPS center in Ontario, CA |
| 21 hr. 30 min. | Depart Ontario, CA |
| 25 hr. 40 min. | Stop in Bishop, CA (on U.S. Route 395) |
| 29 hr. 20 min. | Leave CA and enter NV |
| 30 hr. 25 min. | Arrive at UPS facility in Sparks, NV |
| 31 hr. 30 min. | Punch out and leave/go home |
| <u>Total Time</u>: | |
| 4 hr. 30 min. | District of Nevada |
| 21 hr. 0 min. | Eastern or Central District of California (with time off-duty) |
| 10 hr. 55 min. | Eastern or Central District of California (without time off-duty) |

(*Id.*)  UPS claims that Plaintiff, while on his route, "reported to and coordinated with" dispatchers, as well as managers and supervisors, who were all based out of Reno. (Cote Decl. ¶ 6.)  Kisman maintains that a *majority* of his contact with dispatchers came from Ontario.  (Opp'n at 1; Kisman Decl. ¶¶ 8–9; *see also* Compl. ¶ 20 ("Kisman . . . was instructed to call Ontario to get DOT locations so Kisman could get a new DOT physical."; Compl. ¶ 99 ("Kisman called Ontario's dispatch team.").)  Though these allegations do not directly conflict with each other, each party fails to clarify or reject the other's allegation—Defendant does not deny that Kisman would have been in contact with the Ontario facility, and Plaintiff does not deny that he had regular contact with the Reno facility.

4.

Since Kisman was based out of the Reno facility, the management team in Reno was in charge of evaluating Kisman's job performance and disciplinary actions.  (Cote Decl. ¶¶ 7–8.)  Kisman's employment records are kept in Reno as well, according to Philip Cote, Kisman's division manager:

> Since Kisman was based in the Reno hub, my management team and I maintain a substantial amount of files pertaining to his employment in that facility.  These files include disciplinary and grievance records, training records, DOT examination forms and other federal compliance paperwork, and assorted files on his behavior and performance maintained by his managers.

(*Id.* at ¶ 9.)

Notably, every disciplinary letter that Kisman received from UPS was sent from the UPS West Regional Offices in Oakland, CA, as indicated by the return address on the letters themselves.[3]  (*Id.* at Exh. A-3.)  Kisman interprets this to mean that "each and every ultimate disciplinary decision was reviewed and approved," at the UPS offices in Oakland.  (Opp'n at 1–2.)  However, UPS maintains that all substantive decisions were made first in Reno by people based in Reno, who would request the UPS district labor office in Oakland issue a disciplinary letter, a responsibility they say is "strictly clerical."  (Mot. at 6.)  Each letter included is signed by Philip Cote, the Reno Feeder Division Manager, and copied on the letter is Debbie Calkins, who works for Teamsters Local 533 in Reno.  (Cote Decl. Exh. A-3.)

Teamsters can handle any employee's complaints through a formal grievance process, starting with a local-level hearing with local management personnel, then a panel hearing made up of Teamsters and UPS representatives in equal numbers, and finally arbitration if no other resolution is met.  (Mot. at ¶¶ 4–5.)  Kisman alleges that all his disciplinary panel hearings have been in California, and that future hearings in 2021 are scheduled to take place in Monterey, CA and Sacramento, CA.[4]  (Compl. ¶

---

[3] Oakland is located in the Northern District of California.
[4] Monterey is located within the Northern District of California.  Sacramento is located within the Eastern District of California.

1; Kisman Decl. ¶ 4.)  In March 2021, the hearings regarding Kisman took place on Zoom, and Kisman attended virtually, while physically located in the Local 533's office in Reno at the time.  (Cote Decl. ¶ 16.)  All six panel members were physically located in California during the hearing.  (Opp'n at 2; Kisman Decl. ¶ 4.)  Of the six panel members, Plaintiff alleges all six are residents of California, however Defendant submitted documentation reflecting that five are residents of California, and the other one is a resident of Georgia.  (*Id.*; Supp. Cote Decl. ¶ 2.)

**B. Overview of Facts Underlying the Complaint**

For the sake of ease, the Court includes the following dates, facts, and location information because they directly tie into Kisman's claims:

| | |
|---|---|
| Sept. 18, 2018: | After completing a physical, Kisman turns in Department of Transportation paperwork.  (Compl. ¶¶ 18–19.) |
| Sept. 19, 2018: | Kisman is informed that his paperwork was filled out incorrectly and he cannot drive.  Kisman is told to contact UPS in Ontario to receive locations where he can get a new physical. Kisman subsequently receives a falsified physical and is instructed to drive.  (Compl. ¶¶ 20–21.) |
| Sept. 25, 2018: | Kisman is accused of dishonesty and theft of time, and is discharged, three days after discussing his complaints and concerns at a Federal Motor Carrier Safety Association meeting.  (Compl. 24–25.) |
| Dec. 4, 2018: | A panel hearing takes place in Northern California, and Kisman is reinstated with UPS.  (Compl. ¶ 30; Reply at 7.) |
| Dec. 17, 2018: | Kisman receives a warning letter for being absent from work "even though UPS docked his sick days while he was out," prompting Kisman to file four grievances, one of which was for retaliation for use of FMLA leave.  (Compl. ¶ 33.) |
| Sept. 12, 2019: | Kisman takes FMLA leave of absence following his |

| | |
|---|---|
| | mother's brain surgery. UPS sends Kisman a 72-hour warning letter for missing work. (Compl. ¶ 53.) Kisman goes to care for his mother in Thousand Oaks, CA. (Compl. ¶ 55.) |
| Sept. 25, 2019: | Kisman receives three discharge letters for: (1) the 72-hour notice, (2) abandonment/failure to respond to 72-hour notice, (3) unauthorized leave of absence and alleged undependability. (Compl. ¶ 54.) |
| Nov. 19, 2019: | Kisman receives another discharge letter for undependability for absent day. [It is unclear if he was still on FMLA leave at the time.] (Compl. ¶ 56.) |
| Dec. 2019: | Meetings take place between UPS HR, Debbie Calkins, and Kisman, and UPS agrees to drop all discharge letters. (Compl. ¶ 57.) UPS wants Kisman to drop all of his grievances. (Compl. ¶ 58.) |
| Dec. 20, 2019: | UPS sends Kisman two discharge letters, one for alleged undependability when Kisman "used a [sic] FMLA day," and the other for "being one minute late to work." (Compl. ¶ 59.) Kisman filed a grievance in response. (*Id.*) |
| Feb. 5, 2020: | Panel meeting takes place in person in Northern California. (Compl. ¶ 62; Reply at 7.) |
| July 27, 2020: | Kisman observes a vehicle following him while driving on his route. (Compl. ¶ 75.) |
| Aug. 19, 2020: | While checking in to his hotel in Ontario, CA, Kisman observes "a strange vehicle with somebody inside watching him." (Compl. ¶ 90.) |
| Aug. 24, 2020: | Kisman receives two discharge letters for calling in sick. (Compl. ¶ 92.) |
| Aug. 28, 2020: | Kisman observes another vehicle in the hotel parking lot in Ontario, CA, who seemingly is taking a video of Kisman walking by, then Kisman also sees the man with his arms inside Kisman's trailer. (Compl. ¶ 97–98.) |
| Aug. 31, 2020: | Kisman observes a vehicle parked near him, observing him. (Compl. ¶ 101.) |
| Sept. 2, 2020: | Kisman observes the same man as before in the yard at the UPS facility in Ontario. (Compl. ¶ 102.) |
| Nov. 19, 2020: | Kisman goes out on disability leave. (Compl. ¶ 128.) |

| Nov. 21, 2020: | Kisman receives four discharge letters, dated Oct. 29, 2020, and Nov. 12, 2020. (Compl. ¶ 129.) |
| Jan. 12, 2021: | Kisman returns to work. (Compl. ¶ 134.) Upon arriving at work, he was informed he was being discharged for dishonesty and for theft, pursuant to the information given to UPS by a private investigator hired to follow Kisman. (Compl. ¶ 135.) |
| Mar. 8, 2021: | Another panel hearing begins. (Compl. ¶ 148.) This panel meeting was over Zoom; during the hearing Kisman was located in Reno and states that all the panel members were in California, however UPS fails to confirm or deny where the panel members were located. (Kisman Decl. ¶ 4; Cote Decl. ¶ 16; Mot. at 6 ¶ 9; Opp'n at 2; Reply at 7.) |
| Mar. 11, 2021: | The panel hearing ends, and upholds UPS's decision to discharge Kisman. (Compl. ¶¶ 148–150.) |

Kisman alleges that a substantial portion of his claims occurred in California, rather than Nevada, to support his argument that California, and specifically this District, is a proper venue to bring his claims.

## II. LEGAL STANDARD

### A. Proper Venue

#### 1. General Federal Venue Statute

The framework for determining proper venue for a case to be heard is outlined in 28 U.S.C. § 1391. Venue is proper in either "a judicial *district* in which any defendant resides," (28 U.S.C. § 1391(b)(1) (emphasis added)), or "a judicial *district* in which a substantial part of the events or omissions giving rise to the claim occurred."[5] 28 U.S.C. § 1391(b)(2) (emphasis added). Section 1391(b)(2) "does not require that a majority of the events have occurred in the district where suit is filed,

---

[5] If neither the requirements of 28 U.S.C. § 1391(b)(1) nor 28 U.S.C. § 1391(b)(2) are met, the case can be brought in any judicial district where the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(3).

1  nor does it require that the events in that district predominate." *Rodriguez v.*
2  *California Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000), *abrogated*
3  *on other grounds by Woods v. City of Hayward*, No. 19-CV-01350-JCS, 2019 WL
4  5789256 (N.D. Cal. Nov. 6, 2019).  Accordingly, it is possible for venue to be proper
5  in several judicial districts.  *Id.*; *see also Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768
6  F. Supp. 1343, 1346 (D. Or. 1991) (Section 1391(b)(2) "contemplates that there may
7  be more than one district in which a substantial part of the events giving rise to the
8  claim occurred, and that venue would be proper in each such district.")

9  **2.  Specific Venue Provisions Under the ADA**

10  "Whether a specific venue is proper in a given case is governed entirely by
11  statute." *Callahan v. BNSF Ry. Co.*, No. 3:17-CV-1121-AC, 2018 WL 11218650, at
12  *2 (D. Or. May 4, 2018) (citing *Atlantic Marine Const. Co., Inc. v. U. S. Dist. Ct. for*
13  *Western Dist. of Texas*, 571 U.S. 49, 56–57 (2013)). Here, because Plaintiff filed
14  causes of action under the Americans with Disabilities Act ("ADA"), the Court's
15  analysis must follow the ADA's "special venue rule" instead of the general federal
16  venue statute, 28 U.S.C. § 1391(b).  *Hammond v. Wal-Mart Stores, Inc.*, No. CV F 10-
17  1788 LJO DLB, 2011 WL 1668209 at *2 (E.D. Cal. May 2, 2011).

18  "In employment discrimination cases, the [ADA] venue provisions control
19  rather than the general federal venue statute, even if a non-[ADA] claim is included."
20  *Mayberry v. Int'l Bus. Machs. Corp.*, CV09-1369 CW, 2009 WL 1814436, at *3
21  (N.D. Cal. June 25, 2009) (citing *Johnson v. Pay Less Drugstores Nw., Inc.*, 950 F.2d
22  586, 587–88 (9th Cir. 1991); *see also Callahan*, 2018 WL 11218650, at *2.  The
23  statutory provision governing proper venue analysis for cases which include claims
24  arising under the ADA is 42 U.S.C. § 2000e-5(f)(3), within Title VII of the Civil
25  Rights Act:

26
27  Each United States district court . . . shall have jurisdiction of actions
     brought under this subchapter. Such an action may be brought:
28

9.

(1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,

(2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or

(3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,

(4) but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

(5) For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3) (numbering added).

**B. Improper Venue**

A defendant can file a Motion to Dismiss for Improper Venue.  Fed. R. Civ. P. 12(b)(3).  Dismissal under Rule 12(b)(3) is appropriate only when the venue is "wrong" or "improper," which depends on "whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 49–50 (2013).  When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[6]  28 U.S.C. § 1406(a).

A court may dismiss the case entirely if transferring would not be in the interests of justice.  *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *see also Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983), *cert. denied*, 465 U.S. 1081 (1984) ("Justice would not have been served by transferring [Plaintiff's] claims back to a jurisdiction that he purposefully sought to avoid through blatant forum shopping.")

---

[6] Defendant requests, pursuant to 28 U.S.C. § 1406(a), transfer of venue to the District of Nevada.  (Mot. at 2–3.)

10.

1     When faced with a Rule 12(b)(3) motion, "the plaintiff bears the burden of

2  proving that venue is proper" in the judicial district where they filed.  *Timely*

3  *Inventions, LLC v. Netgear, Inc*., No. CV 17-08864-AB-RAOx, 2018 WL 5266869, at

4  *1 (C.D. Cal. June 12, 2018) (citing *Piedmont Label Co. v. Sun Garden Packing Co*.,

5  598 F.2d 491, 496 (9th Cir. 1979)).  Also for this motion, "a court need not accept the

6  pleadings as true and may consider facts outside of the pleadings." *Guy A. Shaked*

7  *Invs. Ltd. v. Ontel Prod. Corp.*, No. CV 19-10592-AB-MAAx, 2020 WL 6107066 at

8  *1 (C.D. Cal. July 30, 2020) (citing *Argueta v. Banco Mexicano*, S.A., 87 F.3d 320,

9  324 (9th Cir. 1996)).

10     ### *C.* Transferring Venue for *Forum Non Conveniens*

11     Generally, the plaintiff's choice of forum "is afforded substantial weight,"

12  however, "[t]he degree to which courts defer to the plaintiff's chosen venue is

13  substantially reduced where the plaintiff does not reside in the venue or where the

14  forum lacks a significant connection to the activities alleged in the complaint."

15  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (internal citations

16  omitted).  The Court's deference is also substantially reduced where a plaintiff is

17  found to be forum shopping. *Id.* (citing *Royal Queentex Enterprises v. Sara Lee*

18  *Corp.*, No. C-99-4787 MJJ, 2000 WL 246599 at *3 (N.D. Cal. Mar. 1, 2000).

19     Under 28 U.S.C. § 1404, the party moving to transfer venue must "establish that

20  venue is proper in the transferor district; that the transferee district is one where the

21  action might have originally been brought; and that transfer will serve the convenience

22  of the parties and witnesses and will promote the interests of justice." *LaGuardia v.*

23  *Designer Brands, Inc.*, No. CV 19-1568-JM-BLM, 2020 WL 2463385 at *6 (S.D. Cal.

24  May 7, 2020) (quoting *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151. 1155-

25  56 (N.D. Cal. 2009)); *see also Williams*, 157 F. Supp. 2d at 1106 ("The burden of

26  showing that transfer is appropriate is on the moving party.")

27     Accordingly, courts in the Ninth Circuit employ a two-pronged

28  analysis to determine whether transferring venue is appropriate.  First, a

1  court must discern which judicial districts the case could have been brought

2  in originally.  *LaGuardia*, 2020 WL 2463385 at *6.  Second, the court

3  weighs a list of factors against each other: (1) plaintiff's choice of forum; (2)

4  convenience of the parties; (3) convenience of the witnesses; (4) ease of

5  access to the evidence; (5) familiarity of each forum with an applicable law;

6  (6) feasibility of consolidation with other claims; (7) any local interest in the

7  controversy; and  (8) the relative court congestion and time of trial in each

8  forum. *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1213 (S.D. Cal.

9  2013) (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151 (N.D.

10 Cal. 2009)).  This list is not necessarily exhaustive of all possible

11 influencing factors; for example, some courts have considered the relative

12 congestion of each potential judicial district, while others have not.  *See*

13 *Four Jays Music Co. v. Apple, Inc.*, CV 19-7952-FMO-MAAx, 2020 WL

14 7862123, at *2 (C.D. Cal. Dec. 1, 2020) (*citing Williams v. Bowman*, 157 F.

15 Supp. 2d at 1106).  The court's prerogative is to evaluate the facts of each

16 case separately, and "with consideration of convenience and fairness." *Four*

17 *Jays*, 2020 WL 7862123, at *2.

18 **III. DISCUSSION**

19      **A. Venue Under the ADA**

20           **1.  In any judicial district in the State in which the unlawful**

21           **employment practice is alleged to have been committed.**

22      The Ninth Circuit has held that "venue should be found where the effect of the

23 unlawful employment practice is felt: where the plaintiff works, and the decision to

24 engage in that practice is implemented." *Passantino v. Johnson & Johnson Consumer*

25 *Prods., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000).   "An unlawful employment practice

26 is "committed" within the meaning of § 2000e-5(f)(3) either in the place where the

27 employment decision was made or where the employee works at the time of the

28 decision." *Haney v. United Airlines, Inc.*, No. 15-CV-00474-VC, 2016 WL 11576197

at *1 (N.D. Cal. Aug. 3, 2016).

### a. Where Employment Decision Was Made

Plaintiff claims that UPS made its employment decisions in Oakland, from where he received his formal letters. (Kisman Decl. ¶ 3; Opp'n at 1.) Plaintiff also claims that he received orders from dispatch in Ontario regularly. (Opp'n at 1.) Defendant claims that all their relevant decisions regarding the future of Kisman's employment were made at the Reno facility, and the Oakland office was merely responsible for physically sending the letter—a "clerical task." (Mot. at 6, n.3.) The ADA venue provision is broad, as it allows for venue in "any judicial district in the State" where the purported unlawful employment practice occurred. 42 U.S.C. § 2000e-5(f)(3). The Court finds that regardless of whether Plaintiff's alleged discrimination occurred in Oakland when the letters were dispatched or Ontario where he took orders, this District would be a proper venue because Plaintiff has made a threshold showing that any alleged discrimination took place within the state of California.

### b. Where Employee Worked at Time of Decision

In this case, Kisman took leave under the FMLA, resulting in conflict and discharge letters from UPS on three occasions. (Compl. ¶¶ 33; 53–59; 127–129.) The nature of FMLA leave is such that there must be a reason for the period of absence—the plaintiff is unable to work because he needs to attend to medical needs of qualified individuals under the Act. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (noting that while an individual is on FMLA leave, the implication is that they are "not capable of working."). But this would be a mischaracterization. It is clear Kisman was still employed by UPS while on FMLA leave, that he still was "working" there, in the proverbial sense, when UPS made the decision to discharge him, not that he was actively at clocked-in at work at the exact moment of the decision.

UPS alleges that Kisman was "employed" in Reno because that is where his

employment was established and he was based for the entirety of his employment with UPS.  (Cote Decl. ¶ 4.)  Reno/Sparks is Kisman's home base; he resides in Nevada, and is registered to UPS's employee records with an address listing as such. (*Id.*)  He reports to work and punches in at the UPS facility in Sparks, NV.  (Kisman Decl. ¶ 9.)  When he returns from a trip, he punches out in Sparks, NV.  (*Id.*)  His supervisors and managers are all in Nevada.  (Cote Decl. at ¶ 5.)

Plaintiff does not dispute that he was *based* out of the Reno facility, but, based on the nature of his job as a feeder driver, does dispute the overarching notion that his base facility is his *only* place of work.  (Opp'n at 1; Kisman Decl. ¶ 8.)  Unlike the standard office job, Kisman's occupation necessitates actual movement from one location to another throughout his work day.  (Kisman Decl. ¶ 9.)  Plaintiff claims, because his truck route from Reno to Ontario lies primarily in California, that while working at UPS over the last five years, a majority of his time on the job was spent in the Eastern and Central Districts of California.  He communicates with and is under the control of the dispatch in Ontario, CA.  (*Id.* at 8.)  He regularly punches out, has ten hours of time off-duty, and punches back in at his turnaround point in Ontario, CA.  (Kisman Decl. ¶ 9.)  The Court interprets this, not as an attempt on Plaintiff's behalf to say that he *only* works in California, but for the purposes of this specific venue provision, that he works in *both* States.[7]

Kisman further purports that all his previous and future disciplinary hearings

---

[7] The respective amount of time spent in each judicial district is not relevant to the Court's analysis, because it analyzes venue pursuant to the special venue rule under the ADA, not the general federal venue statute.  (42 U.S.C. § 2000e-5(f)(3); *see* 28 U.S.C. § 1391(b)(2) (venue is proper for "a judicial *district* in which a substantial part of the events or omissions giving rise to the claim occurred.").)  Plaintiff spent time in the (1) District of Nevada, (2) Eastern District of California, and (3) Central District of California.  Even if one wished to exclude the Eastern District on the basis that he was merely passing through on the way to his destination, the Central District would remain.

were or are scheduled to take place in California.  (Compl. ¶ 1; Kisman Decl. ¶ 4.)  In March of 2021, Kisman attended his hearings virtually, via zoom, while physically located in Reno.  (Cote Decl. ¶ 16.)  All six panel members were physically located in California during the hearing.  (Opp'n at 2; Kisman Decl. ¶ 4.)  Of the six panel members, Plaintiff alleges all six are residents of California, however Defendant submitted documentation reflecting that five are residents of California, and the other one is a resident of Georgia.  (*Id.*; Supp. Cote Decl. ¶ 2.)  Further, the in-person hearings have taken place in the Northern District and Eastern District of California.

In similar cases, the court in *Shutler v. Dunkin' Brands, Inc.* rejected a plaintiff's ADA venue claim in a Tennessee court, holding in part that "the events and employment practices set forth in Plaintiff's Complaint did not occur in Tennessee." No. CV 14-02048, 2015 WL 3544450, at *6 (M.D. Tenn. May 29, 2015).[8]  In *Shutler*, the plaintiff, who was an employee of Dunkin' Brands, Inc. ("Dunkin"), was a resident of Tennessee.  *Id.*  The plaintiff in *Shutler* held positions with the company in both Massachusetts and Rhode Island, as well as went on a one-week business trip to New Jersey.  *Id.*  The Court concluded that the plaintiff had "worked" for Dunkin in all three states (Rhode Island, Massachusetts, and New Jersey), thus at least three judicial districts would be appropriate venues.  *Id.*  Here, Kisman moved through three districts over the course of a work trip; it follows to say he "worked" in the District of Nevada, Central District of California, and Eastern District of California.

Kisman's case is distinguishable from the court's ruling in *Ambriz v. Matheson Tri-Gas*, No. CV 14-1041 CW, 2014 WL 2753886 (N.D. Cal. June 9, 2014).  In *Ambriz*, the plaintiffs were also truck drivers, so the nature of their employment was also mobile and caused them to move through various districts:

> "Plaintiffs draw attention to the fact that they drove routes running through [the Northern District] and as a result some alleged meal and rest break violations took place here. But Plaintiffs often drove routes

---

[8] The Court recognizes that this case is not binding authority, but finds it persuasive because the factual situations are similar.

1
2
3
4
5

> in the Central District, as well. Moreover, the management decisions causing the alleged violations were made by branch location managers in the Central District. These policies are central to Plaintiffs' claims. A substantial portion of the operative facts occurred in the Central District. Because Plaintiffs do not reside here and most of the operative facts occurred elsewhere, their legitimate interest in this forum is minimal."

6  *Ambriz*, 2014 WL 2753886 at *2 (rejecting Northern District as an appropriate venue).

7  First, this case was governed by the general federal venue statute, not pursuant to the

8  specific venue provision within § 2000(e)-5(f)(3) of the ADA.  Thus the court's

9  reasoning cannot be appropriately applied.  Next, plaintiffs in *Ambriz* did not have a

10  destination in the Northern District of California, they did not reside there, and they

11  merely passed through; thus the court concluded that no substantial amount facts

12  occurred in the Northern District.  *Id.*  In the instant case, Plaintiff did have a

13  destination in the Central District of California (Ontario), he was followed by UPS

14  private investigators while in Ontario, he stayed with his mother in Thousand Oaks

15  while on FMLA leave, and he received four discharge letters while caring for her.

16  (*See generally* Compl.)

17          This provision of ADA venue is satisfied since Plaintiff was present in the

18  Central District of California when discharged, letters were issued from Oakland, his

19  panel hearings took place in California, and he was followed by UPS in Ontario,

20  where he was also under the control of Ontario's dispatch.  Thus, the effects of

21  termination were felt here, regardless of when the ultimate termination occurred.

22  **2.  In the judicial district in which the employment records relevant**
23  **to such practice are maintained and administered.**

24          "[Where] a company could keep business records in an office located in one

25  judicial district, but engage in discriminatory hiring [or firing] practices at a different

26  office in another district . . . an action could properly be brought in either district."

27  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 505 (9th Cir.

28

16.

2000) (holding that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt.").

Defendant shows, and Plaintiff does not dispute, that significant employment records are *maintained* at the Reno facility, where his management team was based out of.  Phillip Cote, the Reno Feeder Division Manager noted that:

> Since Kisman was based in the Reno hub, my management team and I maintain a substantial amount of files pertaining to his employment in that facility.  These files include disciplinary and grievance records, training records, DOT examination forms and other federal compliance paperwork, and assorted files on his behavior and performance maintained by his managers.

(Cote Decl. ¶¶ 7–9.)  As for *administration* of employment records, Kisman points to the fact that discharge letters sent by UPS to Kisman were sent from their offices in Oakland, CA, which means to him that "each and every ultimate disciplinary decision was reviewed and approved," at the UPS offices in Oakland.  (*Id.* at Exh. A-3; Opp'n at 1–2.)  UPS maintains that all substantive decisions were made first in Reno by people based in Reno, and that this does not help Plaintiff's case in the Central District, because Oakland is in the Northern District of California.  (Mot. at 6.)  Each letter is addressed as from Philip Cote and Debbie Calkins is copied on each one as well—both of these people are based in Reno.  (Cote Decl. Exh. A-3; *see also* Reply at 5 ("Kisman's Reno managers made all decisions regarding what type of discipline to issue and when; the Oakland office's only role was to print and mail a letter reflecting the decision Cote and his Nevada management team had already made.").)

The Court also notes the lack of information regarding any existing employment records that may have been maintained at the Ontario facility.  This Court finds that Plaintiff has not met his burden on this component of the ADA venue analysis.

///

///

17.

1      **3. In the judicial district in which the aggrieved person would have**
2      **worked but for the alleged unlawful employment practice.**

3      The Court has previously discussed that, for purposes of venue, Plaintiff

4      worked, at the very least, in both Reno, Nevada, and Ontario, California. The Court

5      assumes that, if not discharged by UPS, he would have continued working in these

6      locations. But for the alleged unlawful employment practice, Kisman would have

7      moved through the District of Nevada, Central District of California, and Eastern

8      District of California during a typical shift at work, thus the Central District of

9      California is an appropriate forum.

10     **4. But if the respondent is not found within any such district, such**
11     **an action may be brought within the judicial district in which the**
12     **respondent has his principal office.**

13     Defendant UPS has their principal place of business in Atlanta, Georgia, thus if

14     none of the above prongs are met, the case could be heard in the United States District

15     Court for the Northern District of Georgia . (Mot. at 3 ¶ 2.) However, as discussed

16     above, Plaintiff has satisfied at least two of the three ways by which the ADA allows

17     for this District to be a proper venue for Plaintiff's claims—thus this prong is not

18     relevant.

19     **B. Transferring Venue**

20     **1. Judicial Districts in which the Case Could Have Been Brought**

21     The Court has established that venue is proper in the Central District of

22     California for two separate reasons under the ADA venue provisions. The Court now

23     must consider the threshold question of whether the case could have been brought in

24     another judicial district for purposes of Defendant's *forum non conveniens* argument.

25     And discussed above, based on the events underlying Plaintiff's claims, this case

26     could have been brought in the (1) Central District of California, or (2) District of

27     Nevada.

28     ///

18.

## 2. Weighing the Interests of the Parties and Witnesses

### a. Plaintiff's Choice of Forum.

Generally speaking, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) ("The general rule is that a plaintiff's choice of forum is afforded substantial weight.")

This deference is diminished where the (1) "plaintiff does not reside in the venue," (*Williams*, 157 F. Supp. 2d at 1106) (2) "where the forum lacks a significant connection to the activities alleged in the complaint," (*Id.*) or (3) "where a plaintiff is found to be forum shopping." *Id.*

First, Kisman does not reside in the state of California; he is a resident of Nevada. (Compl. ¶ 1.) There are some operative facts that occurred within this forum. For example, while in Ontario, CA, Kisman alleges he was followed by someone who turned out to be a private investigator that was hired by UPS. (Compl. ¶¶ 75–82.) Most of his safety, wage, and hour issues, for which he filed complaints against UPS, arose out of his long drives that were mostly in California to a California destination. (Kisman Decl. ¶¶1–9, Exh. 2; *see also* Opp'n at 5 ("Plaintiff endured a substantial portion of the harm alleged while he was in the Central District of California.").) Lastly, it is possible that Kisman is forum shopping, especially considering California's favorable employment laws which Plaintiff admits is one of the reasons he filed suit in this Court. (Opp'n at 11). This possibility is strengthened by the fact that he does not reside in California. In all, this factor somewhat decreases the Court's deference to Plaintiff's choice.

### b. Convenience of the Parties.

Plaintiff resides in Nevada, yet he asserts that this forum is convenient for him because he visits his family often, and they are located in Thousand Oaks and Simi Valley. (Kisman Decl. ¶5, Exh. 1.) Defendant argues that Plaintiff's place of

residence, Nevada, would be more convenient than a place he must travel to visit. (Reply at 8.)  The Court agrees, that while perhaps Plaintiff does not perceive California less convenient personally, his place of residence would be a more convenient forum.

Plaintiff asserts, and Defendant fails to dispute, that this forum is convenient for Defendant as well, because they do substantial business in the Central District of California.  (Opp'n at 9.)  Plaintiff also says that this forum is convenient based on the location of Defendant's counsel; however the Court declines to consider convenience of counsel under this factor.  *See Pralinsky v. Mutual of Omaha Ins.*, 2008 WL 4532563, at *2 (N.D. Cal. Oct. 9, 2008) ("[C]onvenience of counsel is not considered in ruling on a section 1404(a) transfer motion").

### c.  Convenience of the Witnesses.

"The convenience of witnesses 'is often the most important factor considered by the court when deciding a motion to transfer for convenience.'"  *LaGuardia v. Designer Brands, Inc.*, No. 19CV1568 JM(BLM), 2020 WL 2463385, at *7 (S.D. Cal. May 7, 2020) (quoting *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013)). There are an estimated 56 potential witnesses to be called in this case: Kisman alleges that "32 out of [the 56] potential witnesses for this case, e.g. nearly 2/3, reside in California; and 1/3 of those California witnesses reside in the Central District."[9] (Opp'n at 9.)  Defendant disagrees, and purports that Plaintiff's own documents do not support these assertions.  (Reply at 10.)  Accordingly, Defendant argues that only eight of the witnesses reside in the Central District of California, while twenty-one reside in Nevada.  (*Id.*; Mot., Exh. C.)  The Court finds that in the face of competing evidence, this factor does not weigh strongly one way in support of transfer.

///

---

[9] Kisman incorrectly stated in his Opposition that there were 53 witnesses total. (Opp'n at 9.)

### d.  Ease of Access to the Evidence.

This factor is of diminished importance, because "advances in technology have made it easy for documents to be transferred to different locations." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) (quoting *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Sup. 2d 1141, 1148 (C.D. Cal. 2009).) However, because UPS has paper employment records for Kisman located in Nevada, this weighs slightly in favor of transferring venue.  (Mot. at 17.)

To this factor, Defendant also proposes that it would be unable to compel testimony from two key material witnesses, Scott Tucker and Debbie Calkins, because under Rule 45(c)(1)(A), subpoena power can only reach within "100 miles of where the person resides, is employed, or regularly transacts business in person."  (Fed. R. Civ. P. 45(c)(1)(A); Mot. at 17.)  Plaintiff counters that the Court should not consider this lack of compulsory power, because both of the witnesses have already expressed willingness to testify on his behalf at trial, (Opp'n at 12); Defendant maintains that Plaintiff is unable to make that guarantee outside the 100 mile radius.  (Reply at 12.) On balance, the ease of evidence does not weigh strongly one way or another.

### e.  Familiarity of Each Forum With an Applicable Law.

As this case has federal question jurisdiction, the "forum's familiarity with supplemental state law claims should not override other factors favoring a different forum." *Whitten v. Right Thing, LLC*, CV101358PSGMLGX, 2010 WL 11595772, at *3 (C.D. Cal. Aug. 26, 2010) (quoting *Foster v. Nationwide Mut. Ins. Co*., No. 07-CV-4928 (SI), 2007 WL 4410408 at *3-4 (N.D. Cal. Dec. 14, 2007)).

Plaintiff alleges eight federal causes of action.  (Compl. ¶¶ 153–225.) Defendant argues that the federal claims are brought alongside their California state law analogues, and are substantially similar to their federal counterparts.  (Mot. at 18.) The Court finds there is no issue for these claims to be heard in Nevada.  Plaintiff also has four claims arising under California torts law or common law, which the Court finds could likely be heard by Nevada court without significant issues. (*Id.* at ¶¶ 195–

21.

213.)  Plaintiff, in his Opposition, provides no direct explanation for why a California court would be more familiar with these claims (*see* Opp'n at 13), but it seems to follow that a California federal court could have more experience with California state law than a Nevada federal court.  On balance, this factor does not strongly favor transfer.

### f.  Feasibility of Consolidation With Other Claims;

Neither Plaintiff nor Defendant addresses this factor in their papers and it likely does not apply in this case.  The Court finds this factor to be neutral.

### g.  Any Local Interest in the Controversy.

There is a "local interest in having local controversies decided at home." *Decker*, 805 F.2d at 843.  Home for Kisman is not California, and UPS has neither its place of incorporation or principal place of business in California.  (Mot. at 19–20.) However, the Court notes that Defendant failed to dispute that it does substantial business in the state of California.  (Opp'n at 9.)  More, Kisman was in regular contact with dispatch in Ontario, and spent a majority of his time working in California.  The UPS facility where Kisman, a resident of Nevada, was based out of, is in Nevada, as are the majority of supervisors and management, who also comprise almost all of the potential witnesses.  (Mot. at 19–20.)  The Court finds that both California, specifically this district, and Nevada have a local interest in the controversy, thus this factor is neutral.

### h.  The Relative Court Congestion and Time of Trial in Each Forum.

As stated in Defendant's Motion to Dismiss:

> [The] District of Nevada received 527 total new filings (442 civil) per judge in 2020, compared to 650 total new filings (594 civil) in the Central District of California. … When weighted to reflect the amount of time judges typically take to resolve particular types of cases, the District of Nevada received 473 new filings per judge in 2020, comparted to the Central District of California's 716.

(Mot. at 20.)  The Court finds that the difference between the two districts, taking into

22.

account the relative amount of time that a case might take in each district, could weigh in favor of transferring venue. However, this factor is minor compared to the others in this analysis. *See LaGuardia*, 2020 WL 2463385 at \*8.

Because Defendant has the burden of persuading the Court that transfer is appropriate, the Court finds that in light of the factors above—all of which either are neutral, favor Plaintiff, or slightly favor Defendant—that Defendant has not met this burden for transfer. *See Williams*, 157 F. Supp. 2d at 1106 ("The burden of showing that transfer is appropriate is on the moving party.")

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss for improper venue. Accordingly, the Court **DENIES** Defendant's Motion to Transfer Venue. Defendant is ordered to file a response to the Complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: August 13, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

23.